THE BOARD OF EDUCATION OF THE TOWN OF KEARNY, NEW JERSEY, PROSECUTOR, v. VINCENT P. HORAN, AUGUSTA GRAW, EVELYN M. ROSA AND BESSIE BOTH-WELL LANDSCHOOF, AND STATE BOARD OF EDUCATION, DEFENDANTS.

THE BOARD OF EDUCATION OF THE TOWN OF KEARNY, NEW JERSEY, PROSECUTOR, v. VIOLA L. COOKE ET AL. AND STATE BOARD OF EDUCATION, DEFENDANTS.

Argued May 2, 1933—Decided September 7, 1933.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *Charles M. Myers.*

For the defendants, *Merritt Lane.*

PER CURIAM.

The board of education of the town of Kearny challenges the legality of an order of the commissioner of education, made March 13th, 1933, directing the prosecutor to reinstate as many of the defendant teachers as there were positions in its school system on the reorganization of August 3d, 1932, which had been filled by teachers who were not on that date protected by the Tenure of Office act, if the defendant teachers were at that time or had previously been employed in such type of work, and assigning the defendant teachers as nearly as might be to positions of similar rank to those which they held during the school year 1931-1932, and directing the payment of their salaries in the amount to which they would be entitled under the salary schedule for

such position. The prosecutor further challenges the legality of an order of the state board of education, made on April 1st, 1933, affirming the order of the commissioner.

In the town of Kearny, on June 30th, 1932, there were ten elementary schools with an enrollment of five thousand four hundred and twenty-eight.pupils. There were seven vacant rooms and one thousand and fifty-nine additional vacant seats distributed in the various buildings. At that time there were in the employ of the prosecutor ten principals and one hundred and eighty-two elementary teachers. Because of economic conditions the prosecutor deemed it advisable to re-organize the school system and provide a standard class size of thirty-five pupils. In order to accomplish this, pupils from a number of smaller classes were distributed among other classes so as to equalize the pupil load. The result of the transfers showed that the pupils could be as efficiently taught with approximately thirty-six less teachers. The pre-ceding portion of this paragraph is stated in the prosecutor's brief as a correct summary of the proofs, and we accept it as such. In the reorganization thirty-six teachers were elimi-nated. Of that number fourteen were non-tenure teachers and twenty-two were tenure teachers. After the abolition of the positions of thirty-six teachers there remained in the school one hundred and forty-six teachers, of whom sixteen had served less than three years and one hundred and thirty of whom had served more than three years. Stated other-wise, fourteen non-tenure teachers were retained at the same time that twenty-two tenure teachers were discharged, and the question is whether·that status was lawfully created.

It is conceded that the decrease in the number of pupils in the Kearny school district was not sufficient to justify the abolition of the positions of thirty-six teachers; but it is claimed that section 3 of the Tenure of Office act (*Pamph. L.* 1909, *ch.* 243; 4 *Comp. Stat., p.* 4764), in providing that "nothing herein contained shall be held to limit the right of any school board to reduce the number of principals or teachers employed in any school district when such reduction shall be due to a natural diminution of the number of pupils

in said school district" contained the authority for the action taken by the Kearny board of education, for the reason, as it is said, that the facts above set forth create a "natural diminution" of the number of pupils and therefore justified the action. The opinion rendered by this court in *Seidel* v. *Board of Education of Ventnor City,* 110 *N. J. L.* 31; 164 *Atl. Rep.* 901, seems dispositive of the question. It was there held, as summarized in the syllabus, that a teacher in a public school, employed by general contract as such, who, by service for three years or more, has come under the protection of the statute providing for an indefinite period thereafter may not be dismissed for reasons of economy while other teachers not so protected, whose assignments such teacher is competent to fill, are retained under employment. It may be granted that the abolition of thirty-six classes and thirty-six teachers was in the interest of economy, but the Seidel case is authority for the proposition that that movement for economy is not to be accomplished by dismissing teachers who are under the protection of the statute providing for indefinite tenure while other teachers not so protected are retained. The competency of the defendant teachers is not challenged. Prosecutor's brief contains the suggestion that "a tenure teacher may not be competent to teach the class or the subject of a non-tenure teacher," but the argument of incompetency, to be effective, must be based upon proof and not upon mere possibility.

It is also argued that the compensation paid the non-tenure teachers who were retained is less than the compensation paid, up to the time of dismissal, the tenure teachers who were dismissed. This suggestion carries little weight because the right of the prosecutor to reduce the salaries of the tenure teachers to a level commensurate with the grade taught is not at issue. As was said in the Seidel case:

"Granting that apart from the statute, a school board may in the interest of economy reduce the number of teachers, the protection afforded by the statute would be little more than a gesture if such board were held entitled to make that reduction by selecting for discharge teachers exempt by law there-

from and retaining the non-exempt. If such reduction is to be made at all, and a place remains which the exempt teacher is qualified to fill, such teacher is entitled to that place as against the retention of a teacher not protected by the statute."

The writ will be dismissed, with costs.